UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW DAMIEN NASCI,

                              Plaintiff,

v.                                                        6:15-CV-0947
                                                          (GTS)
CAROLYN W. COLVIN
Acting Comm'r of Soc. Sec.,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OFFICE OF PETER M. HOBAICA                     B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee Street
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                   JOANNE PENGELLY, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Matthew Damien Nasci

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 17, 20.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is

denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff completed one year of college, completed heavy equipment training, and has past work as a production welder, a heavy equipment operator, a landscape laborer, and a welder.  (T. 28, 179.)[1]  Generally, Plaintiff's alleged disability consists of lower back disc herniation with chronic pain, depression, scars and residuals, lower extremities and left flank pain, and problems with the right wrist and elbow.  (T. 24, 177.)

### B.    Procedural History

On October 3, 2012, Plaintiff applied for a period of Disability and Disability Insurance Benefits, alleging disability beginning September 10, 2007.  (T. 20.)  Plaintiff's application was initially denied on January 31, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  On April 3, 2014, Plaintiff appeared in a video hearing before the ALJ, Lisa B. Martin.  (T. 32-68.)  On June 4, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 14-31.)  On June 5, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 22-30.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  (T. 22.)  Second, the ALJ

---

[1]    Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

found that Plaintiff and did not engage in substantial gainful activity from September 10, 2007 (his alleged onset date) to December 31, 2012 (his date last insured). (*Id.*) Third, the ALJ found that Plaintiff has the following severe impairments: lower extremity shrapnel injury; lumbar spine disorder associated with grade I spondylolisthesis; hip disorder; bilateral carpal tunnel syndrome; sleep apnea; and depression. (*Id.*) Fourth, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 22-24.) The ALJ considered Listings 1.00, 4.00, 12.00, and 12.04. (*Id.*)

Fifth, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform

> a full range of sedentary work as defined in 20 CFR 404.1567(a),[2] except the claimant requires the opportunity on an hourly basis to change positions for one to two minutes, plus have access to normal work breaks. The claimant must avoid climbing ladders, ropes, and scaffolding, and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to frequent, but not constant, upper extremity handling, finding, and feeling tasks. The claimant must also avoid dangerous work hazards (including unprotected heights and exposed machinery). Because of pain and mental health distractions preventing detailed decision making, the claimant is limited to routine, uninvolved tasks not requiring a fast assembly quota pace.

(T. 24-28.) Sixth, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (T. 28-29.) Seventh, and finally, the ALJ determined that, through the date last insured, there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (T. 29-30.)

---

[2] Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983).

**D.      The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff asserts nine arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in analyzing the mental opinion of treating psychiatrist Dr. Komareth.  (Dkt. No. 17, at 14-17 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ erred in affording less than controlling weight to the physical opinion of treating physician Dr. Padmanabhan, and failing to analyze his findings indicating that Plaintiff had a less than sedentary RFC.  (*Id.* at 17-20.)  Third, Plaintiff argues that the ALJ erred in failing to set forth specific findings supporting her RFC determination that Plaintiff can perform the mental and physical demands of sedentary work.  (*Id.* at 20-22.)  Fourth, Plaintiff argues that the ALJ erred by failing to consider the mental opinion of consultative mental examiner Dr. Loomis.  (*Id.* at 22-23.)  Fifth, Plaintiff argues that, in considering whether Plaintiff met the mental Listings, the ALJ failed to consider treating psychiatrist Dr. Komareth's opinion that Plaintiff had marked limitations in social functioning and maintaining concentration.  (T. 23-25.)

Sixth, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's obesity and impairments of the legs and knees were severe impairments at step two of the sequential analysis.  (*Id.* at 25-26.)  Seventh, Plaintiff argues that the ALJ improperly substituted her own lay opinion for that of a medical professional in determining that Plaintiff had the RFC to perform sedentary work, which was not supported by the medical opinion evidence.  (*Id.* at 26-28.)  Eighth, Plaintiff argues that the ALJ's credibility analysis failed to set forth the required regulatory factors.  (*Id.* at 28-29.)  Ninth, and finally, Plaintiff essentially argues that the ALJ's step five determination relied on vocational expert testimony that was based on an incomplete hypothetical.  (*Id.* at 29-30.)

Generally, Defendant asserts four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's RFC finding. (Dkt. No. 20, at 6-14 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly considered the report of Dr. Loomis. (*Id.* at 14-15.) Third, Defendant argues that the ALJ applied the proper legal standard in evaluating Plaintiff's leg impairments and obesity at step two, and substantial evidence supports the ALJ's finding that these impairments did not cause limitations beyond those included in the RFC. (*Id.* at 15-16.) Fourth, and finally, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff could perform jobs existing in significant numbers in the national economy. (*Id.* at 16-17.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The

Supreme Court has recognized the validity of this sequential evaluation process. *Bowyen v.

Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities. If the claimant suffers such an

impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.    Whether the ALJ's Step Two Determination Was Supported by Substantial Evidence

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes

in a routine work setting. 20 C.F.R. § 404.1521(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). Here, Plaintiff argues that the ALJ erred by failing to find that Plaintiff's obesity and impairments of the legs and knees were severe impairments at step two.

As an initial matter, the Court notes that obesity "is not in and of itself a disability." *Yablonski v. Comm'r of Soc. Sec.*, 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31,

2008) (citing *inter alia* SSR 02-1p, 2002 WL 34686281, at *4 [Sept. 12, 2002]). SSR 02-1p provides that, as with any other medical condition, the SSA "will find that obesity is a 'severe' impairment when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281, at *4. For disability program purposes, "[t]here is no specific level of weight or BMI [body mass index] that equates with a 'severe' or 'not severe' impairment." *Id.*

Pursuant to SSR 02-1p, the SSA undertakes "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Hulbert v. Comm'r,* 06-CV-1099, 2009 WL 2823739, *11 (N.D.N.Y. Aug. 31, 2009). "SSR 02-1p notwithstanding, an ALJ is not obligated to single out a claimant's obesity for discussion in all cases." *Hulbert*, 2009 WL at *11 (internal citations and quotation marks omitted).

Here, a review of Plaintiff's disability reports indicates that he did not initially allege that his obesity was a disabling impairment or limited his ability to perform basic work activities. (T. 177.) However, Plaintiff testified at the hearing that his weight gain since injuring his back in 2007 aggravated the pain from his back injury and shrapnel injuries (in the lower extremities), and severely limited his ability to sit, stand, and walk. (T. 47-48.) In support of his argument that the ALJ should have found his impairments of the legs and knees severe, Plaintiff cites a medical treatment record stating that the shrapnel in his legs had recently been bothering him around his hip and knees. (Dkt. No. 17, at 25 [Pl.'s Mem. of Law].) However, the ALJ found that Plaintiff's hip disorder and lower extremity shrapnel injury were severe impairments at step two. (T. 22.) Therefore, the Court is unpersuaded by Plaintiff's argument that the ALJ failed to find that Plaintiff's impairments of the legs and knees were severe.

In any event, for the reasons discussed below in Point III.B. of this Decision and Order, this matter is being remanded for the ALJ to reevaluate the medical opinion evidence and Plaintiff's RFC. Upon remand, the ALJ should also consider the severity of Plaintiff's obesity and any other impairments, as appropriate, in light of any new medical evidence obtained and her reassessment of the medical opinion evidence.

**B.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence in Determining Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 17, at 17-23 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Residual functional capacity ("RFC") is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 [July 2, 1996]). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at

*8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider opinions from acceptable medical sources, and may consider opinions from other sources, to show how a claimant's impairments may affect his or her ability to work.[3] 20 C.F.R. § 404.1513(a)(1)-(5) (identifying the five types of acceptable medical sources as: (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists).

Under the "treating physician's rule," controlling weight is afforded to an opinion from a plaintiff's treating physician when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Greek,* 801 F.3d at 375; *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004)

---

[3] Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

(listing regulatory factors).

For the ease of analysis, the Court will address the ALJ's physical and mental RFC determinations separately below.

### i. The ALJ's Physical RFC Determination

The record includes opinions of Plaintiff's work-related physical abilities and limitations from the following two acceptable medical sources: (1) consultative examiner Marvin Rabinowitz, M.D., and (2) treating physician Manesh Padmanabhan, M.D. (T. 236-40, 466-69.)

### a. Consultative Examining Dr. Rabinowitz

On December 28, 2012, Dr. Rabinowitz examined Plaintiff and diagnosed him with low back pain, injured right knee, bilateral carpal tunnel syndrome, tennis elbow on the right, sleep apnea, chronic headaches, shrapnel in the lower extremities, and hypertension. (T. 236-40.) Additionally, Dr. Rabinowitz stated that an x-ray examination of Plaintiff's left spine showed spondylolisthesis and spondylosis. (T. 240.)

Upon examination, Dr. Rabinowitz observed that Plaintiff stayed off his left leg and dragged it along while walking, and was unable to walk on his heels or tiptoes or squat due to back pain. (T. 238.) Dr. Rabinowitz observed that Plaintiff was unable to flex his back due to pain, had limited extension of the lumbar spine, could not perform lateral flexion or rotation, and had limited straight leg raising on both sides. (T. 236.) Dr. Rabinowitz noted that Plaintiff was treated by a chiropractor for four years, had physical therapy, took hydrocodone for his back, and received two epidural shots that were deemed ineffective. (T. 233.) In sum, Dr. Rabinowitz opined that Plaintiff had "moderate" limitations with prolonged standing, walking, bending, squatting, lifting, and carrying. (T. 240.)

### b.      Treating Physician Dr. Padmanabhan

On October 11, 2013, Dr. Padmanabhan provided an opinion of Plaintiff's work-related physical abilities and limitations due to his chronic low back pain.  (T. 466-69).  Dr. Padmanabhan opined that, during an eight-hour workday, Plaintiff could sit for two hours, stand/walk for two hours, and would need to lay down intermittently throughout the day at an unpredictable frequency.  (*Id.*)  Dr. Padmanabhan opined that Plaintiff could lift/carry ten pounds or less on an "occasional basis" (defined as one to two times per hour up to one-third of an eight-hour workday), and could lift/carry five pounds or less on a "frequent basis" (defined as four times per hour up to two-thirds of an eight-hour workday).  (T. 466.)

Dr. Padmanabhan further opined that Plaintiff could "occasionally" climb, balance, and kneel; could "never" crouch, crawl, or stoop; and had "severe" limitation reaching in all directions.  (T. 467.)  Dr. Padmanabhan opined that Plaintiff's pain, fatigue, and/or weakness due to his low back pain and obstructive sleep disorder would cause him to be off-task for at least 50 percent of an eight-hour workday.  (T. 468.)  Finally, Dr. Padmanabhan opined that Plaintiff's impairments would likely produce "good days" and "bad days," and Plaintiff would likely be absent from work more than four days per month.  (*Id.*)

In assessing Plaintiff's physical RFC, the ALJ afforded "significant" weight to Dr. Padmanabhan's opinion, but "did not find a basis" for his opinion that Plaintiff would be off-task for at least 50 percent of a workday.  (T. 27.)  Additionally, the ALJ afforded "some" weight to Dr. Rabinowitz's opinion "to the extent the results of his physical examination support the residual functional capacity assessed and are consistent with the record as a whole."  (*Id.*)  However, in finding that the Plaintiff had the RFC to perform a range of sedentary work, the ALJ failed to cite, and the record does not contain, a medical opinion to establish that Plaintiff could

perform all of the exertional demands of the ALJ's physical RFC (including sitting for six hours, standing and walking for two hours, and lifting/carrying up to ten pounds in an eight-hour workday). (T. 24-28); 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983). Notably, Dr. Padmanabhan's opinion of Plaintiff's limitations (including sitting for no more than two hours in an eight-hour workday) would limit him to less than sedentary work; and Dr. Rabinowitz's opinion of Plaintiff's "moderate" physical limitations did not define the term "moderate" or provide additional information to indicate the meaning of the term. (T. 240, 466-69.)

The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff could perform the exertional requirements of sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds). The use of terms like "mild" and "moderate" has been found to pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Anderson v. Colvin,* 12-CV-1008, 2010 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) *(citing Waldau v. Astrue,* 11-CV-0925, 2010 WL 6681262, at 4 ([N.D.N.Y. Dec. 21, 2003]). However, here, that is not the case because the ALJ determined that Plaintiff's lower extremity shrapnel injury, lumbar spine disorder associated with grade I spondylolisthesis, hip disorder, bilateral carpal tunnel syndrome, and sleep apnea were severe impairments. (T. 22.) Therefore, based on the current record, Dr. Rabinowitz's opinion is too vague to establish whether Plaintiff can perform the exertional demands of sedentary work.[4] Moreover, the ALJ did not recontact Dr. Rabinowitz to resolve any ambiguities

---

[4]     The Court notes that Dr. Rabinowitz did not indicate the number of hours that Plaintiff could sit, stand, and walk in an eight-hour workday. (T. 240.) Nor did Dr. Rabinowitz indicate the amount of weight that Plaintiff could lift and carry, and how frequently Plaintiff could lift and carry objects, during an eight-hour workday. (*Id.*)

in the opinion, or to obtain a more specific opinion of Plaintiff's work-related physical abilities and limitations.[5]

Accordingly, it appears that the ALJ improperly substituted her own lay opinion for competent medical opinion evidence in finding that Plaintiff had greater physical abilities than opined by treating physician Dr. Padmanabhan.  It is well settled that the ALJ is not permitted to substitute his or her own expertise or view of the medical proof for any competent medical opinion.  *Greek*, 802 F.3d at 375; *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.").  Therefore, the Court need not address whether Dr. Padmanabhan or Dr. Rabinowitz's opinions bound the ALJ under the regulations due to the ALJ's aforementioned omission.  *Balsamo*, 142 F.3d at 81 (finding that the Court need not address whether the physicians' opinions bound the ALJ under the regulations because the ALJ did not cite *any* medical opinion to dispute the physicians' conclusions as to the plaintiff's work-related limitations).

Moreover, even if the ALJ properly assessed the opinions of Dr. Padmanabhan and Dr. Rabinowitz, the ALJ's RFC determination that Plaintiff could perform a range of sedentary work is not supported by substantial evidence based on the current record.  *See id.*, at 81-82 (finding

---

[5]     The Court recognizes that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  However, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1520b(c)(1)-(4); *Rosa*, 168 F.3d 72, 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

that the ALJ's RFC determination was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform sedentary work); *House v. Astrue*, 11-CV-0915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical opinion supporting the ALJ's RFC determination).

For these reasons, remand is necessary for the ALJ to reassess the opinions of treating physician Dr. Padmanabhan and consultative examiner Dr. Rabinowitz. As appropriate, the ALJ may recontact Dr. Padmanabhan and/or Dr. Rabinowitz to request clarification or additional information regarding their opinions. *See* 20 C.F.R. § 404.1520b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). This may include recontacting Dr. Rabinowitz to obtain a more specific opinion of Plaintiff's physical abilities and limitations. Remand is also required for the ALJ to reevaluate Plaintiff's RFC based on a proper evaluation of the physical opinions and in light of any new information obtained.

### ii. The ALJ's Mental RFC Determination

The record includes assessments of Plaintiff's work-related mental abilities and limitations from the following three acceptable medical sources: (1) consultative mental examiner Cheryl Loomis, Ph.D., (2) State agency psychological consultant Juan Echevarria, M.D., and (3) treating psychiatrist V. Komareth, M.D. (T. 76-77, 468-70, 524-27.)

### a. Consultative Mental Examiner Dr. Loomis

On December 10, 2012, Dr. Loomis examined Plaintiff and diagnosed him with major depressive disorder without psychotic features. (T. 527.) Upon examination, Dr. Loomis observed that Plaintiff's affect was dysphoric and his mood was dysthymic. (T. 525.) Dr. Loomis noted that Plaintiff reported depression in the form of dysphoria, crying spells, hopelessness, diminished self-esteem, anhedonia, irritability, and recurrent thoughts of death or suicide. (T.

525-26.)  Dr. Loomis noted that Plaintiff denied socializing with anyone and described his family relationships as okay.  (T. 526.)

In sum, Dr. Loomis opined that Plaintiff could follow simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks.  (T. 526.)  Dr. Loomis further opined that Plaintiff could perform complex tasks with supervision, make appropriate decisions, and relate adequately with others.  (*Id.*)  Dr. Loomis opined that Plaintiff could not appropriately deal with stress.  (*Id.*)  Finally, Dr. Loomis concluded that the results of the examination appeared to be consistent with psychiatric problems that may "significantly interfere with the claimant's ability to function on a daily basis."  (T. 527.)

### b. State Agency Psychological Consultant Dr. Echevarria

On January 24, 2013, Dr. Echevarria reviewed Plaintiff's medical records and completed a psychiatric review technique.  (T. 76-77.)  Dr. Echevarria indicated that Plaintiff had mild restrictions in activities of daily living; and maintaining concentration, persistence, or pace.  (T. 76.)  Dr. Echevarria indicated that Plaintiff had no difficulties maintaining social functioning and no repeated episodes of decompensation of extended duration.  (*Id.*)

### c. Treating Psychiatrist Dr. Komareth

On October 24, 2013, Dr. Komareth provided an opinion of Plaintiff's work-related mental abilities and limitations due to his recurrent major depression.  (T. 468-70.)  Dr. Komareth opined that Plaintiff had "marked" limitation in his ability to deal with the public; relate to authority figures; deal with stress; maintain attention/concentration; understand, remember and carry out detailed and complex instructions; behave in an emotionally stable manner; relate predictably in

social situations; and demonstrate reliability.[6]  (T. 469.)  Dr. Komareth further opined that

Plaintiff had "minimal" limitation in his ability to follow rules; relate to acquaintances and other

familiar people; use judgement; function independently; understand, remember, and carry out

simple instructions; and maintain personal appearance.[7]  (*Id.*)  Finally, Dr. Komareth opined that

Plaintiff would likely be absent more than four days per month as a result of symptoms of his

mental impairment or treatment.  (T. 467.)

   In assessing Plaintiff's mental RFC, the ALJ afforded "little" weight to Dr. Echevarria's

psychiatric review technique; and "little" weight to treating psychiatrist Dr. Komareth's opinion,

reasoning that Dr. Komareth's reports failed to reveal significant abnormalities.  (T. 28.)

Notably, in discounting Dr. Komareth's opinion, the ALJ failed to cite an alternative medical

opinion to support her finding that Plaintiff had greater abilities than opined by Dr. Komareth in

many work-related mental activities.[8]  (T. 24.)  For example, Dr. Komareth opined that Plaintiff

had a "marked" limitation in dealing with stress, meaning that he was "effectively precluded"

from dealing with stress consistently in a workday; and Dr. Loomis also opined that Plaintiff

could not appropriately deal with stress.  (T. 469, 526.)  Therefore it appears that the ALJ

improperly substituted her own lay opinion for that of a medical professional in discounting Dr.

Komareth's opinion and determining Plaintiff's mental RFC.  *Greek*, 802 F.3d at 375; *Rosa*, 168

F.3d at 79.

---

[6]     The assessment form defined "marked" as effectively precluded from performing the activity consistently and without interruption due to symptoms throughout an eight-hour period of time on a daily basis.  (T. 469.)

[7]     The assessment form stated that "minimal" indicates that the individual retains the ability to sustain this activity consistently and without interruption due to symptoms throughout an eight-hour period of time despite the presence of limitations.  (T. 469.)

[8]     Regarding the ALJ's statement that Dr. Komareth's reports failed to reveal significant abnormalities, the Second Circuit has found that, "[i]n the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."  *Balsamo,* 142 F.3d at 81.

The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House*, 2013 WL 422058, at *4 (internal citation and quotation marks omitted). However, that is not the case in the present matter. The Social Security Rulings underscore the highly complex and individualized nature of mental impairments, which may impact both exertional and nonexertional work functions. *See, e.g.*, SSR 96-8p, at *6 ("[E]ven though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands. For example, a mental impairment may cause fatigue or hysterical paralysis."); SSR 85-15, 1985 WL 569857, at *5 ("Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult.").[9]

Finally, Plaintiff correctly notes that the ALJ failed to weigh the opinion of consultative psychiatric examiner Dr. Loomis. (Dkt. No. 17, at 22-23 [Pl.'s Mem. of Law].) As noted above, in assessing a claimant's RFC, an ALJ "must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory

---

[9]       SSR 85-15 further provides that

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse response to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly having their performance supervised, and remaining in the workplace for a full day . . . . Thus, the mentally impaired may have difficulty meeting the requirement of even so-called "low stress" jobs.

SSR 85-15, 15 *6.

and other requirements of work." *Domm*, 2013 WL 4647643, at *8 (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The ALJ must consider opinions from acceptable medical sources, such as Dr. Loomis, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(a)(1)-(5).

For these reasons, remand is necessary for the ALJ to properly assess the opinions of Plaintiff's mental abilities and limitations. As appropriate, the ALJ may recontact the medical sources to request clarification or additional information regarding their opinions. *See* 20 C.F.R. § 404.1520b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). Remand is also required for the ALJ to reassess whether Plaintiff met or equalled the mental Listings and reevaluate Plaintiff's mental RFC based on a proper evaluation of the mental opinions and in light of any new information obtained.

Because the Court has concluded that remand is required for the ALJ to reassess the medical opinion evidence and reevaluate Plaintiff's RFC based on a proper evaluation of the medical opinion evidence, the Court need not reach Plaintiff's remaining arguments concerning subsequent steps of the sequential analysis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated:     March 7, 2017
           Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge